**UNITED STATES, Petitioner,**

v.

**Honorable Nicholas S. NUNZIO, Associate Judge, Superior Court of the District of Columbia, Respondent.**

**No. 81–84.**

District of Columbia Court of Appeals.

Argued April 2, 1981.

Decided May 14, 1981.

Rehearing and Rehearing En Banc Denied June 30, 1981.

---

William J. Birney, Asst. U. S. Atty., Washington, D.C., with whom Charles F. C. Ruff, U. S. Atty., and John A. Terry, John R. Fisher, and Paul L. Knight, Asst. U. S. Attys., Washington, D.C., were on the petition for a writ of mandamus.

Hon. Nicholas S. Nunzio, Associate Judge, Superior Court of the District of Columbia, Washington, D.C., pro se, was on the response to the petition. W. Gary Kohlman, Public Defender Service, Washington, D.C., argued for respondent. Silas J. Wasserstrom, Public Defender Service, Washington, D.C., also entered an appearance for respondent.

Charles F. Stow, Washington, D.C., appointed by the court, entered an appearance for defendant Hamid and adopted the response submitted on behalf of respondent.

Nathan Lewin and Seth P. Waxman, Washington, D.C., were on the amicus curiae brief on behalf of The Jewish Community Council of Greater Washington.

Before KELLY, HARRIS, and MACK, Associate Judges.

HARRIS, Associate Judge:

Abdul Hamid, also known as Hilvan Jude Finch, was convicted of conspiracy to commit kidnapping while armed, D.C. Code 1973, § 22–105a, assault with a dangerous weapon, id., § 22–502, and eight counts of kidnapping while armed, id., §§ 22–2101, –3202. The charges stemmed from his involvement with eleven other defendants in the takeover of three buildings on March 9, 1977, during which more than 130 persons were held hostage, one person was killed, and several were seriously injured. On September 6, 1977, respondent sentenced Hamid to a term of from 36 to 108 years in prison. We affirmed the convictions. *Khaalis v. United States*, D.C.App., 408 A.2d 313 (1979), *cert. denied*, 444 U.S. 1092, 100 S.Ct. 1059, 62 L.Ed.2d 781 (1980). On June 25, 1980, Hamid filed a motion for reduction of sentence under Super.Ct.Cr.R. 35(a). On January 2, 1981, respondent vacated Hamid's original sentence, suspended execution of sentence, and placed him on probation for five years. On January 8, 1981, respondent vacated the order of January 2 and resentenced Hamid to ten concurrent one-year terms (for each of the ten counts of which he had been convicted), with credit for time served. Consistent therewith, Hamid was released from custody.

The government has petitioned this court for a writ of mandamus directing the trial judge to vacate his order of January 8, 1981, on the ground that he had no authority to act under Rule 35(a), and to reinstate the original sentence. We conclude that the trial judge did act without proper authority, and grant the government's petition for a writ of mandamus.[1]

Rule 35(a) provides in pertinent part:

The court may reduce a sentence within 120 days after the sentence is imposed, or within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 120 days after entry of any order or judgment of the Supreme Court denying review of, or having the effect of upholding, a judgment of conviction.

The clear time limitation contained in the rule is reinforced by Super.Ct.Cr.R. 45(b), which provides that "the court may not extend the time for taking any action under Rule[ ] . . . 35, except to the extent and under the conditions stated in [it]."[2]

---

1. In light of our disposition of the government's petition for a writ of mandamus, we dismiss its appeal, *United States v. Hamid*, No. 81–79, from the trial court's orders.

2. The sole exception to the 120-day time limitation of Rule 35 is its provision that the court may reduce a sentence upon revocation of probation. *See McDaniels v. United States*, D.C. App., 385 A.2d 180, 181–82 (1978).

■ Hamid's motion for reduction of sentence was timely filed.[3] Nonetheless, it is obvious that "[t]he 120-day time limitation of Rule 35 ... by its terms does *not* apply to the timely *filing* of motions. It sets a time limit on the power of the court to act." *United States v. Pollack*, (D.C.Cir., No. 80–1374, Dec. 24, 1980, slip op. at 4) (emphasis in original). In this case the trial court did not act on Hamid's motion until January 2, 1981, more than six months after its power to reduce the sentence had expired.

The Supreme Court recently stated that the time period of Rule 35 is jurisdictional and may not be enlarged. *United States v. Addonizio*, 442 U.S. 178, 189, 99 S.Ct. 2235, 2242, 60 L.Ed.2d 805 (1979). In a unanimous opinion, the Court stated:

> [O]nce a sentence has been imposed, the trial judge's authority to modify it is also circumscribed. Federal Rule Crim. Proc. 35 now authorizes District Courts to reduce a sentence within 120 days after it is imposed or after it has been affirmed on appeal. The time period, however, is jurisdictional and may not be extended. [*Id.* (footnotes omitted).]

We long have adhered to that view.[4] *Brown v. United States*, D.C.App., 411 A.2d 631, 633 (1980); *McDaniels v. United States*, D.C.App., 385 A.2d 180, 182 (1978); see *Franklin v. United States*, D.C.App., 293 A.2d 278 (1972).[5] Moreover, we are obliged to heed the interpretation of Rule 35 expressed by the Supreme Court in *Addonizio.*[6] We followed that path in *Brown v. United States, supra*, as have most courts which have addressed the issue since *Addonizio.*[7] *United States v. Pollack, supra; United States v. Gonzalez-Perez*, 629 F.2d 1081, 1083 (5th Cir. 1980) [without relying on *Addonizio* but citing Fed.R. Crim.P. 45(b)]; *United States v. Hetrick*, 627 F.2d 1007, 1011 (9th Cir. 1980) [relying both on *Addonizio* and on Fed.R.Crim.P. 45(b)]; *People v. Nix*, 610 P.2d 1088, 1091 (Colo.App. 1980) (without relying on *Addonizio*); *State v. Moses*, 227 Kan. 400, 403–404, 607 P.2d 477, 481 (1980) (same).

■ Consequently, we conclude that the trial court was without authority to grant defendant Hamid's motion for reduction of sentence once the 120-day time period had expired.[8] We note that the trial court granted the defendant's motion in this case based largely upon favorable prison records

---

**3.** The motion was filed on the 118th day of the relevant 120-day period, making it virtually impossible for it to have been ruled upon with care within 120 days.

**4.** As we observed in *McDaniels v. United States, supra* note 2, some federal circuits have interpreted Rule 35 liberally to allow a court to act upon the motion within a reasonable time beyond the 120-day period if the motion to reduce was filed within the time period. 385 A.2d at 182 n.3.

**5.** In *Walden v. United States*, D.C.App., 366 A.2d 1075 (1976), we affirmed the trial court's denial of a motion for reduction of sentence over two years after the sentence was imposed. The question whether the trial court could have granted the motion was not before us; accordingly, we do not view *Walden* as authorizing an extension of time within which the trial court may act. Additionally, while in *McDaniels* we noted that some circuits had adopted a more liberal interpretation of the rule, we have never stretched the rule beyond its plain meaning in this jurisdiction.

**6.** While the Supreme Court's interpretation is of Fed.R.Crim.P. 35, Super.Ct.Cr.R. 35(a) is identical to its federal counterpart and is to be construed in light of the interpretation given to the latter. *McDaniels v. United States, supra*, 385 A.2d at 181 n.2; *Walden v. United States, supra* note 5, 366 A.2d at 1077 n.1. See *Campbell v. United States*, D.C.App., 295 A.2d 498, 501 (1972).

**7.** The Third Circuit has chosen neither to follow nor to acknowledge *Addonizio*. See *United States v. Johnson*, 634 F.2d 94, 95 n.1 (3d Cir. 1980); *Government of Virgin Islands v. Gereau*, 603 F.2d 438, 442 n.2 (3d Cir. 1979). We are not constrained to follow its interpretation in any event, in part since an opinion in our own circuit views *Addonizio* as casting doubt on the validity of the interpretation espoused by the Third Circuit. See *United States v. Pollack, supra*, slip op. at 6–7.

**8.** The difficulties which our dissenting colleague finds in a strict interpretation of Rule 35(a) are obvious, but are consistent with the logical premise that a sentencing judge's control over a defendant's time of incarceration is to be limited in duration. Any modification of Rule 35(a) should be achieved by amendment, rather than by disregarding its clear language.

and the apparently strong indications of Hamid's rehabilitation. Once sentence has been imposed, however, considerations such as these generally are more properly addressed by the parole authorities, rather than by the sentencing judge. *United States v. Addonizio, supra,* 442 U.S. at 188–89, 99 S.Ct. at 2242; *Brown v. United States, supra,* 411 A.2d at 632; *Walden v. United States,* D.C.App., 366 A.2d 1075, 1077 (1976); *Burrell v. United States,* D.C. App., 332 A.2d 344, 346, *cert. denied,* 423 U.S. 826, 96 S.Ct. 42, 46 L.Ed.2d 43 (1975); *United States v. Pollack, supra,* slip op. at 6.

We question neither the trial judge's conscientiousness nor his good faith. In that connection, we note that not all avenues for the possible modification of Hamid's period of incarceration are foreclosed by our interpretation of Rule 35. Under D.C. Code 1973, § 24–201c, the Board of Parole may apply to the sentencing court for the early release of a prisoner upon its determination "that there is a reasonable probability that a prisoner will live and remain at liberty without violating the law, and that his immediate release is not incompatible with the welfare of society." The Board may apply to the trial court for reduction of a minimum sentence without regard to the 120-day time constraints of Rule 35; the trial court then may act on such an application at any time prior to the expiration of the minimum sentence.[9]

In light of the foregoing, we grant the government's petition for a writ of mandamus directing respondent (1) to vacate his order of January 8, 1981, which purported to reduce Hamid's sentence, and (2) to reinstate the original sentence.

*So Ordered.*

MACK, Associate Judge, dissenting.

The government's petition raises the basic question of whether a trial judge may rule, beyond the 120-day period specified in Super.Ct.Cr.R. 35(a), upon a timely filed motion for reduction of sentence. In holding that Judge Nunzio was without authority to act, the majority adopts a position unsupportable by precedent. I would hold that a trial judge has a reasonable time within which to act upon a timely filed motion for reduction of sentence, that Judge Nunzio, under the circumstances of this case, acted within a reasonable time and, therefore, that the extraordinary remedy of mandamus should not be granted.

I.

The majority correctly acknowledges that our Rule 35(a) and its federal counterpart (Fed.R.Crim.P. 35(a)) are identical, and that, therefore, our rule is to be construed in light of the interpretation given to the latter by the federal courts. *See McDaniels v. United States,* D.C.App., 385 A.2d 180, 181 n.2 (1978). Having done so, the majority proceeds to ignore the fact that every United States Circuit Court of Appeals to address the issue has held that a trial court has a reasonable time beyond the 120th day within which to decide a timely filed Rule 35 motion. *See, e. g., United States v. Johnson,* 634 F.2d 94 (3rd Cir. 1980); *Government of the Virgin Islands v. Gereau,* 603 F.2d 438 (3rd Cir. 1979); *United States v. Williams,* 573 F.2d 527 (8th Cir. 1978); *United States v. Mendoza,* 565 F.2d 1285 (5th Cir. 1978), *modified,* 581 F.2d 89 (5th Cir. 1978) (en banc); *United States v. Stollings,* 516 F.2d 1287 (4th Cir. 1975); *United States v. Janiec,* 505 F.2d 983 (3rd Cir. 1974), *cert. denied,* 420 U.S. 948, 95 S.Ct. 1332, 43 L.Ed.2d 427 (1975); *United States v. Polizzi,* 500 F.2d 856 (9th Cir. 1974), *cert. denied,* 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 820 (1975); *Leyvas v. United States,* 371 F.2d 714 (9th Cir. 1967); *Dodge v. Bennett,* 335 F.2d 657 (1st Cir.

---

**9.** Section 24–201c is subject to certain restrictions not applicable to Hamid. *See* D.C. Code 1973, § 24–203(b).

1964).[1]  The view espoused by the circuit courts is eminently sound and well founded in reason.

Admittedly, Rule 35 does not explicitly recite language with respect to a defendant *filing* a petition for reduction of sentence. It speaks rather to the time within which a district court may *act*. The majority suggests that its literal interpretation of the rule is reinforced by Rule 45(b) which provides that the trial court may not enlarge the period for action on a motion under certain specified rules, including Rule 35. I will concede that the time limitation is often referred to as jurisdictional, but I remind the majority that the reference has always been made in the context of a holding that a district court does not have jurisdiction to modify a sentence when the Rule 35 motion is filed *after* 120 days have elapsed. *See, e. g., United States v. United States District Court*, 509 F.2d 1352 (9th Cir.), *cert. denied*, 421 U.S. 962, 95 S.Ct. 1949, 44 L.Ed.2d 448 (1975); *United States v. Flores*, 507 F.2d 229 (5th Cir. 1975). With respect to the issue here—whether a trial court could rule beyond the 120th day on a motion timely filed, the circuit courts have uniformly eschewed the easy dispositional route of blindly adhering to the literal meaning of Rule 35. Instead, they have chosen the appropriate course of paying heed to Fed.R.Crim.P. 2 which admonishes that: "[t]hese rules are intended to provide for the just determination of every criminal proceeding. They shall be construed to secure simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay." To the same effect, the Supreme Court has stated that the rules are not, and were not intended to be a rigid code with an inflexible meaning irrespective of the circumstances. *Fallen v. United States*, 378 U.S. 139, 84 S.Ct. 1689, 12 L.Ed.2d 760 (1964). In adopting a strict interpretation of Rule 35, the majority ignores the advice of Justice Black in his dissent to the Court's summary affirmance in *Berman v. United States*, 378 U.S. 530, 538, 84 S.Ct. 1895, 1899, 12 L.Ed.2d 1012 (1964):

> The Criminal Rules were framed with the declared purpose of ensuring that justice not be thwarted by those with too little imagination to see that procedural rules are not ends in themselves, but simply means to an end: the achievement of justice for all.

The soundness of the circuit courts' interpretation of Rule 35 is evident from history. Under the old common law, a trial court lost jurisdiction to act upon a sentence reduction motion with the "rising" of the court, *i. e.*, the running of the court term, unless the motion was made before the end of the term in which sentencing took place. *See United States v. Benz*, 282 U.S. 304, 51 S.Ct. 113, 75 L.Ed. 354 (1931); *United States v. Mendoza, supra; United States v. Stollings, supra; See generally* Annot., 32 A.L.R. Fed. 914 (1977). The time within which the motion had to be filed under the common law rule, therefore, varied greatly depending upon the order in which the cases were tried and, consequently, some defendants did not have enough time to prepare and file their motions. *See id.* Rule 35 was adopted in an effort to reform the erratic and often arbitrary time limitation of the common law rule, and it has been seen as an attempt to ensure that every defendant has sufficient time to submit his motion and that every motion is fairly considered and decided by the district court. *See United States v. Mendoza, supra.*

Similarly today, innumerable, unforeseeable and unavoidable contingencies may arise and prevent a trial judge from ruling upon a motion within the 120-day period. Chief Judge Haynsworth, in *United States v. Stollings, supra* at 1288–89, addressed this very real problem.

---

[1]  While there are no opinions from the United States Court of Appeals for the Second Circuit addressing the issue, district court decisions from that jurisdiction adhere to the prevailing view. *See United States v. Manderville*, 396 F.Supp. 1244 (D. Conn. 1975); *United States v. Ursini*, 296 F.Supp. 1152 (D. Conn. 1968).

For any number of reasons it may be impossible or impractical for a judge to act promptly upon a motion for reduction of sentence filed with the court long before expiration of the 120 day period. The judge may be ill, absent from his district on vacation or for service in some other district, or preoccupied in the trial of a protracted case which should not be interrupted for the conduct of unscheduled hearings in other matters. Frequently in these cases, evidentiary hearings must be held, as in this case, or a medical examination procured. In any such case, witnesses must by summoned or medical reports received, or both.

In such instances, the time required for the court's consideration and action upon the motion is wholly beyond the control of the convicted defendant. He has no means of predicting with any assurance whether the court's need of time to reconsider and act upon his motion will be for one week, two weeks, four weeks, or two months, and if delay flows from the incapacity, the absence or the preoccupation of the judge, its consequences should not be visited upon the prisoner.

By cutting off, on the 120th day, the trial court's authority to act, the majority now compels a defendant to play a guessing game as to when his motion should be filed so that the trial court will be able to render a decision within the time period. Of course, in determining the date upon which he should file his motion, the defendant must not only assess the difficulty of his case and the attendant time it will take for the trial court to make a considered disposition, but he must also provide for the contingency that the trial judge may: become ill or go on vacation (both of which occurred in the instant case); be tied up with another case; or simply sit on the motion until the 120 days have elapsed. The unworkability of the majority's position need not be commented upon at length. Suffice it to say that in reforming the common law rule via Rule 35, the Rules Committee could hardly have intended "to introduce a new set of arbitrary and erratic rules which would deny persons convicted of crime of even the means of predicting when motions under the Rule must be lodged with the court." *United States v. Stollings, supra* at 1289.

The majority strains to substantiate its position by interpreting the Supreme Court case of *United States v. Addonizio,* 442 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979), as making clear the proposition that the 120-day period may not be extended. *Addonizio* dealt with the narrow issue of the jurisdictional scope of 28 U.S.C.A. § 2255 (1948),[2] specifically: does a post-sentencing change in the policies of the United States Parole Commission which prolongs a prisoner's actual imprisonment beyond the period intended by the sentencing judge,[3] support a collateral attack (by means of habeas corpus petition) on the original sentence? In answering this question in the negative,[4]

**2.** Section 2255 has been interpreted to allow collateral attacks on convictions and sentences entered by a court without jurisdiction or in the presence of constitutional error. Claims under § 2255 have also been allowed where errors of law constitute a fundamental defect which inherently results in a complete miscarriage of justice and where errors of fact are of the most fundamental character such that the proceeding itself is rendered irregular and invalid. *See United States v. Addonizio, supra.*

**3.** In sentencing Addonizio to ten years' imprisonment, the trial judge expressed his expectation that exemplary institutional behavior would lead to Addonizio's release when he became eligible for parole after serving one-third of his sentence. The judge did not anticipate, however, that a subsequent change in Parole Commission practices placing a greater emphasis on the gravity of the offense when determining whether a prisoner should be granted parole would by utilized to hinder Addonizio's chances of early parole.

**4.** The Court found that the claimed error—that the trial judge was incorrect in his assumptions about the future course of parole proceedings—did not meet any of the established standards of collateral attack enumerated in note 2, *supra,* and did not render the initial sentence illegal.

the Court, in dictum, stated the general rule that the time period of Rule 35 is jurisdictional and may not be extended, citing the case of *United States v. Robinson*, 361 U.S. 220, 80 S.Ct. 282, 4 L.Ed.2d 259 (1960).[5] The Court, however, was not, as the majority implies, simplifying or clarifying a procedural farrago, but rather was merely stating the general proposition embraced by the circuit courts both pre-[6] and post-[7] *Addonizio*.

*Addonizio* does not represent a change in precedent. This conclusion is borne out by the fact that all subsequent federal cases addressing the issue of the trial court's jurisdiction continue to allow rulings beyond the 120th day when the Rule 35 petitions are timely filed. *See United States v. Johnson, supra; Government of the Virgin Islands v. Gereau, supra; United States v. Snooks*, 493 F.Supp. 1364 (W.D. Mo. 1980),[8] *see also United States v. Hetrick*, 627 F.2d 1007, 1011 n.4 (9th Cir. 1980).[9] Moreover, I take exception to the majority's use of our case of *Brown v. United States*, D.C.App., 411 A.2d 631 (1980) as an example of this court's adherence to the alleged new trail blazed by *Addonizio*. The court in *Brown*, found it necessary to distinguish specifically its facts from those of *United States v. Gee*, 56 F.R.D. 377 (S.D. Tex. 1972), a case applying the circuits' rationale. The court noted that in *Gee*, the Rule 35 motion was timely filed whereas in *Brown*, the motion was untimely.

The precariousness of the majority's position is highlighted by its attempt to construe four post-*Addonizio* cases as examples of adherence to the *Addonizio* dictum. In *United States v. Pollack* (D.C.Cir. No. 80–1374, Dec. 24, 1980), despite its hypothesis that *Addonizio* cast spectres on the prevailing view, the District of Columbia Circuit specifically declined to decide whether or not to follow the circuits in allowing trial courts a reasonable time beyond the 120th day to decide timely filed reduction motions. Reliance on the remaining four cases the majority cites, *United States v. Gonzalez-Perez*, 629 F.2d 1081 (5th Cir. 1980); *United States v. Hetrick, supra; People v. Nix*, 610 P.2d 1088 (Colo.App.1980); *State v. Moses*, 227 Kan. 400, 607 P.2d 477 (1980), is simply stated—unwarranted. The cases involve facts which simply do not raise the issue necessary to the holding the majority advances; all deal with situations where the pertinent motions were either untimely filed or never filed. Moreover, the two federal cases cited contain language totally inconsonant with the majority's position.[10]

The truth of the matter is that the majority has departed from precedent. The law

---

**5.** In *United States v. Robinson, supra*, the Supreme Court held that the United States Court of Appeals did not have jurisdiction to entertain an untimely appeal even though the applicable district court made a finding that the late filing of the notice of appeal was the result of excusable neglect.

**6.** *E.g., United States v. Mendoza, supra*.

**7.** *E.g., United States v. Johnson, supra*.

**8.** The majority fails to acknowledge the case of *United States v. Snooks, supra*, a decision in which the United States District Court for the Western District of Missouri saw fit to discuss briefly *Addonizio*.

**9.** It is interesting to note that the majority was not deterred from citing *United States v. Gonzalez-Perez*, 629 F.2d 1081 (5th Cir. 1980); *People v. Nix*, 610 P.2d 1088 (Colo. App. 1980); *State v. Moses*, 227 Kan. 400, 607 P.2d 477

(1980), to support its interpretation of *Addonizio* even though the courts in those cases, like the Third Circuit, failed to acknowledge *Addonizio*.

**10.** In *United States v. Gonzalez-Perez, supra*, the defendant fled to South America after sentence was imposed. When he was extradited and brought back into the United States *eight years later*, he sought collaterally to attack his sentence and filed a Rule 35 motion. The district court ruled it did not have jurisdiction because the motion was untimely filed. The court of appeals ruled that "appellant could not, by filing a petition for writ of certiorari eight years or more after his conviction, bring himself within the 120-day time limit as provided in Rule 35." *Id.* at 1083. In so ruling, the court noted that "Rule 35 is intended to establish 'clear lines of demarcation so that all concerned would know exactly when the time for *filing* would expire.'" *Id.* at 1083 (citation omitted) (emphasis added).

remains that a trial court retains jurisdiction at least for a reasonable amount of time beyond the 120-day period to rule on a timely filed Rule 35 motion. I therefore would hold that Judge Nunzio was not divested of jurisdiction on the 120th day.

## II.

The record in the instant case supports a conclusion that Judge Nunzio acted within a reasonable time. The trial of the defendant and his codefendants represented one of the most complex and protracted criminal prosecutions in the history of this jurisdiction. The trial judge needed the benefit of the government's view on the issues before rendering a decision. The government, however, did not file an opposition motion with the court for over four months after the defendant filed his petition.[11] During this interim, the trial judge was burdened with a heavy case load, was on annual leave for three weeks and was physically handicapped with a back injury for the better part of a month. Once the government filed its opposition, a hearing was scheduled, and arrangements were made to have the defendant transported from California, and reports on him compiled. The hearing was held and the court determined that independent evaluations of the defendant by community leaders would be helpful, so he ordered two such reports. The reports were submitted, and a decision was rendered three weeks after the hearing.

By comparison, the length of delay here (beyond the date the motion was filed, *viz* six months), is similar to or less than delays allowed by some federal courts. *See e. g., Government of the Virgin Islands v. Gereau, supra* (delay of two years following the 120th day); *United States v. Mendoza, supra* (delay of approximately three months from the filing of the petition); *United States v. Janiec, supra* (delay of six months beyond the 120th day); *United States v. Snooks, supra* (over six months beyond the 120th day). *See also United States v. Pollack, supra,* concurring opinion by Judge Wald (ten month delay is not per se unreasonable).[12]

In an attempt to justify its holding, the majority implies that even had the trial

---

In *United States v. Hetrick, supra,* the appellant initially filed a motion for reduction three days after his conviction was affirmed by an appellate court. His sentence was reduced and the government did not appeal. On the 155th day, appellant filed a motion asking the trial court to reconsider its initial order reducing sentence and to reduce his sentence further. The district court held that it lacked jurisdiction because the motion was untimely filed. On the 300th day, the appellant asked the district court to reconsider its denial of his previous petition to reconsider. The district did so reconsider and further reduced the sentence. The government appealed that order and the Ninth Circuit in reversing the order held that the appellant's motion filed on the 300th day was untimely and failed to vest jurisdiction in the district court. The court of appeals although specifically cognizant of *Addonizio* noted that "[a]lthough Rule 35 states that a court may reduce a sentence within the prescribed 120 day period, the rule has been construed to mean that only the motion must be timely filed within that period—the court may rule within a reasonable time after the 120 day period has elapsed." *Id.* at 1011 n.4 (citation omitted).

The majority's reliance on *People v. Nix, supra,* and *State v. Moses, supra,* is similarly misplaced. In *People v. Nix,* the Colorado Court of Appeals ruled that a trial court did not have jurisdiction to modify a sentence, sua sponte, beyond the 120-day period, and in *State v. Moses, supra,* the Kansas Supreme Court ruled that the trial court did not have authority to grant to the defendant an extension of the appeal time;—no motion for reduction or modification was made nor was any reduction or modification ordered.

**11.** This patience displayed by Judge Nunzio toward the government is just another indication of the even-handedness with which he tried to approach the proceedings. At least one district court has considered the failure of the government to file its opposition to a Rule 35 motion as grounds for granting the motion. *See United States v. Sockel,* 368 F.Supp. 97 (W.D.Mo.1973).

**12.** Only three circuit courts have held that a trial judge acted beyond a reasonable time in ruling on timely filed motions for reduction of sentence. In all three cases, the delays far exceeded the six-month delay in the instant case. *See United States v. Pollack, supra* (delay of ten and a half months); *In re U.S.,* 588 F.2d 56 (4th Cir. 1978) (delay of four and a half years); *United States v. United States District Court, supra* (delay of three years).

court been authorized to act, the trial court's order still must fall because it considered inappropriate factors, *viz* defendant's conduct subsequent to sentencing as evidenced by favorable prison records and his remarkable efforts at rehabilitation. An application of the appropriate standard of appellate review, however, does not support this conclusion. A motion for reduction of sentence is addressed to the sound discretion of the trial court and will not be disturbed on appeal absent imposition of an illegal sentence or the presence of a gross abuse of discretion. *See, e. g., United States v. Nerren,* 613 F.2d 572 (5th Cir. 1980); *United States v. Kouwenhoven,* 602 F.2d 234 (9th Cir. 1979); *Walden v. United States,* D.C.App., 366 A.2d 1075 (1976). It is not the function of an appellate court to substitute its judgment for that of the trial court with respect to sentencing. *United States v. Losing,* 584 F.2d 289 (8th Cir.), *cert. denied,* 439 U.S. 1081, 99 S.Ct. 865, 59 L.Ed.2d 51 (1978); *Walden v. United States, supra.* The fact that Judge Nunzio reviewed defendant's behavior does not give rise to a finding of an abuse of discretion. *See United States v. Sand,* 541 F.2d 1370 (9th Cir.), *cert. denied,* 429 U.S. 1103, 97 S.Ct. 1130, 51 L.Ed.2d 553 (1976) (suggesting that in reviewing motion to reduce sentence, trial court examine the defendant's post-trial conduct); *United States v. Ochs,* 490 F.Supp. 1206 (S.D.N.Y. 1980) (commendable prison deportment is a factor not to be disregarded by a trial court in considering a motion for reduction of sentence). Indeed, this court has sustained trial court refusals to reduce sentence based in part on the prison records of the defendants. *See, e. g., Walden v. United States, supra.* Moreover, while neither a hearing,[13] the defendant's presence at a hearing,[14] or the ordering of reports by outside experts is mandated, the fact that the trial court here made such provisions does not represent an abuse of discretion, in my estimation, but rather depicts the care and concern it exercised to insure that this difficult and sensitive case was disposed of only after the utmost consideration was undertaken. In these circumstances, I cannot conclude that the trial court committed a gross abuse of discretion in ordering reduction of defendant's sentence.

One aspect of this case which the majority does not address is the seriousness of the relief requested by the government—*i. e.,* a writ of mandamus. A writ of mandamus is an extraordinary remedy and should only be issued in the clearest and most compelling of cases. *See, e. g., Cartier v. Secretary of State,* 165 U.S.App.D.C. 130, 506 F.2d 191 (1974), *cert. denied,* 421 U.S. 947, 95 S.Ct. 1677, 44 L.Ed.2d 101 (1975); *Thornton v. Corcoran,* 132 U.S.App.D.C. 232, 407 F.2d 695 (1969). When viewed in this light, the majority's error in disposing of this petition becomes all the more glaring.

I dissent.