**Warren T. ASKEW, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 86–946.

District of Columbia Court of Appeals.

Argued Sept. 17, 1987.

Decided April 28, 1988.

David A. Reiser, Public Defender Service, with whom James Klein, Public Defender Service, was on the brief, for appellant.

Elizabeth Trosman, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., at the time the brief was filed, and Michael W. Farrell, Helen M. Bollwerk, and Charles W. Cobb, Asst. U.S. Attys., were on the brief, for appellee.

Before FERREN, BELSON and TERRY, Associate Judges.

BELSON, Associate Judge:

This appeal presents the question whether a character witness offered by a defendant to testify as to his reputation for peacefulness and good order may be cross-examined about his awareness of the defendant's prior arrest that culminated in a conviction later set aside under the Federal Youth Corrections Act, 18 U.S.C. §§ 5005–5021 (1982), *repealed by* PUB.L. No. 98–473, Title II, § 218(a)(8), 98 Stat. 1837, 2027 (1984). We hold that the witness may be cross-examined concerning the underlying arrest. Accordingly, we affirm appellant's conviction, by jury, of involuntary manslaughter. D.C.Code § 22–2405 (1981); *see Davis v. United States,* 510 A.2d 1051 (D.C.1986); *Faunteroy v. United States,* 413 A.2d 1294 (D.C.1980).

Appellant was brought to trial for the instant offense in March 1986. After the government had rested its case, appellant's

attorney sought a ruling *in limine* whether the three character witnesses appellant wished to call to attest to his reputation for peacefulness and good order could be cross-examined with his 1982 conviction for robbery, which had been set aside later that year pursuant to the Federal Youth Corrections Act. 18 U.S.C. § 5021(b). To cross-examine the witnesses with this conviction, his attorney argued, would violate the "fresh start" spirit of the Act. The government replied that it intended to cross-examine the witnesses not with the conviction, but with the underlying arrest, which had not been set aside. Appellant's attorney proffered that, after having spoken to the witnesses, who had known appellant most of his life, she had ascertained that they would acknowledge that they had heard of the prior arrest, which occurred in 1980, but that their awareness of it did not alter their opinion of appellant's reputation. She also offered the government the opportunity to interview the witnesses outside the courtroom if her proffer was not accepted. She observed for the record that, if the government were allowed to introduce the prior arrest, appellant would not call the witnesses and, thus, he would be prejudiced by the absence of evidence in his favor, in comparison to his codefendant, who planned to put on two character witnesses.

After considering the matter, the court ruled that the witnesses could be cross-examined with the arrest so that the jury would have available a more complete set of facts to assess the reliability of the character testimony and the weight to give it. As a result of the court's ruling, appellant chose not to present this character evidence.[1]

█ It has long been established that when a defendant calls a witness to attest to his good reputation, the witness may be cross-examined concerning his awareness of the defendant's conduct inconsistent with that reputation, including his knowledge of the defendant's prior arrests. *Michelson v. United States*, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948); *Crews v. United States*, 514 A.2d 432 (D.C.1986); *Marcus v. United States*, 476 A.2d 1134 (D.C.1984); *United States v. Lewis*, 157 U.S.App.D.C. 43, 482 F.2d 632 (1973); *Awkard v. United States*, 122 U.S.App.D.C. 165, 352 F.2d 641 (1965). Arrests are the proper subject of cross-examination of a character witness, not to impeach the credibility of the defendant, if he testifies, but to test the probative value of the witness' testimony. *Michelson, supra*, 335 U.S. at 482, 69 S.Ct. at 221–22. Thus, if the character witness has heard of the arrest, but maintains the defendant's reputation is good, the jury may doubt his estimation of the defendant's reputation. On the other hand, if the witness has never heard of the arrest, the jury may question the adequacy of the basis for the witness' testimony regarding defendant's reputation. *Crews, supra*, 514 A.2d at 434 n. 4; *Marcus, supra*, 476 A.2d at 1138–39; *Lewis, supra*, 157 U.S.App.D.C. at 49, 482 F.2d at 638. In this way, the defendant is prevented "from profiting by a mere parade of partisans." *Michelson, supra*, 335 U.S. at 479, 69 S.Ct. at 220.

█ Although questioning about an arrest that has not resulted in a conviction is, under ordinary circumstances, impermissible for the purpose of impeaching the credibility of the person arrested, it is permissible in cross-examining a character witness, for the reasons we have just identified. Thus, in the instant case, were it not for the questions raised by set-aside of the conviction, appellant's earlier arrest would clearly be usable in questioning a character

---

1. The government urges that we decide this case by adopting the principle of *Luce v. United States*, 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984), and thereby conclude that appellant has not preserved his claim for review by his failure to call his character witnesses to testify. In view of our disposition of appellant's arguments, we need decide neither the question whether to adopt the principle of *Luce*, nor the question whether, if we adopt it, to apply *Luce* prospectively from the date it was decided or prospectively from the date of the adopting opinion. Accordingly, we decide this case without reference to *Luce. See Langley v. United States*, 515 A.2d 729, 733 (D.C.1986) (citing *Robinson v. United States*, 513 A.2d 218, 222, 223–24 (D.C.1986) (Ferren, J. dissenting)).

witness, subject of course to the trial court's determination that the probative value of the questioning outweighed its attendant prejudice.[2] Appellant contends, however, that the rehabilitative purpose of the Youth Corrections Act pursuant to which the conviction was set aside requires protection of the underlying arrest from such exposure. He maintains that cross-examination with the arrest would defeat the purpose of the Act, which is to provide a clean slate for a youthful offender. Moreover, he argues, once the offender has shown his good character by earning set-aside of his conviction, his arrest for that conviction would carry no probative value, but would be highly prejudicial. Appellant urges us to apply our holding in *McAdoo v. United States*, 515 A.2d 412 (D.C.1986), to this situation. We decline to do so.

■ In *McAdoo* we held that a character witness cannot be questioned about a defendant's juvenile *adjudications*. *Id.* at 418. In arriving at this conclusion, we stressed that a juvenile adjudication is not the equivalent of a criminal conviction. Not only is a juvenile adjudication a less reliable indication of the defendant's character, but the proceedings and records pertaining to the adjudication are also confidential. *Id.* As a result, few people in the community would be expected to have heard of it. Because of this policy of confidentiality, cross-examination about the adjudication would be unduly prejudicial. *Id.* at 419.

In *Devore v. United States, supra* note 2, however, we distinguished *McAdoo* and held that a character witness may be cross-examined about the *wrongful acts* of the defendant that underlie a juvenile adjudication. 530 A.2d at 1174. We reasoned that community members would have heard of

the juvenile's commission of the underlying acts independent of later legal proceedings. Thus, it would be fair to test a witness' knowledge of the defendant's reputation by asking about these acts.

More recently, and after argument in the instant case, we decided *Rogers v. United States, supra* note 2. In *Rogers*, we held that a character witness may be questioned about the defendant's juvenile arrest. 534 A.2d at 933. We reasoned that the confidentiality surrounding juvenile records, proceedings, and decisions did not carry over to the arrest, which is usually a public act evident to any bystander who is present and "likely to become a point of focus in the community's gaze." *Id.* We concluded that, when a defendant chooses to put his character in issue by presenting a witness to testify about his reputation,

> fairness demands that the prosecution have the opportunity to challenge the witness' statements, both as to the depth of the witness' knowledge of events within the community's consciousness, and as to the accuracy of the witness' representations.

*Id.* (footnote omitted).

We find *McAdoo* entirely inapposite to the case at hand. Appellant's arrest was in no sense confidential. Indeed, despite his eventual sentence under the Youth Corrections Act, appellant was tried as an adult, with a public trial and sentencing hearing.[3]

Nor did the set-aside of appellant's conviction pursuant to the Youth Corrections Act affect his arrest. The Act did not authorize the set-aside of his arrest or the expungement of his arrest records. *Lindsay v. United States*, 520 A.2d 1059, 1063 (D.C.1987); *Doe v. Webster*, 196 U.S.App.D. C. 319, 323, 337 n. 61, 606 F.2d 1226, 1230,

---

**2.** We emphasized in both *Rogers v. United States,* 534 A.2d 928, 933 (D.C.1987), *reh'g en banc granted* (Mar. 8, 1988), and *Devore v. United States,* 530 A.2d 1173, 1176 (D.C.1987) (petition for rehearing/rehearing en banc pending), that the trial court must carefully weigh the probative value and prejudicial effect of the proposed questioning before deciding whether to *permit it.*

**3.** These factors would bear upon the question of whether appellant's conviction could have been used in cross-examining his character witnesses. That issue, however, is not before us. Nor is the issue whether appellant's credibility could be impeached in this manner since appellant did not take the stand. *Cf.* D.C.Code § 14–305(b)(2)(A)(ii) (1981) (witness may not be impeached by conviction that "has been the subject of a certificate of rehabilitation or its equivalent....").

1244 n. 61 (1979); *but see United States v. Doe*, 496 F.Supp. 650 (D.R.I.1980) (set-aside covers arrest records as well as records of conviction); *United States v. Henderson*, 482 F.Supp. 234, 241–43 (D.N.J.1979) (same). Thus, we are not confronted with a situation where arrest records have been sealed.

As is the case with any arrest, it is quite possible that members of the community would have heard of it. There may have been conversations in the community and even far-reaching publicity about it. Set-aside of the conviction at a later time would not have erased this collective memory of the arrest. Appellant's arrest would have become a part of the composite picture of his reputation in the community. Accordingly, questioning of appellant's character witnesses about the arrest would assist the jury in evaluating the witnesses' knowledge of his reputation and the accuracy of their report of it.

Appellant maintains that the "fresh start" policy behind the set-aside would be violated by using the underlying arrest to test the reputation testimony of his character witnesses after the court had determined he was sufficiently rehabilitated to set aside his earlier conviction. It is true that the purpose of the set-aside was to clear the offender's record, thereby removing his civil and social disabilities and allowing him to seek employment without a stain on his record. *See Tuten v. United States*, 460 U.S. 660, 664–65, 103 S.Ct. 1412, 1415, 75 L.Ed.2d 359 (1983); *Brooks v. United States*, 458 A.2d 66, 67 (D.C. 1983); *Doe v. Webster, supra*, 196 U.S.App. D.C. at 327, 606 F.2d at 1234; Hearings on S. 1114 and S. 2609 before a Subcommittee of the Senate Committee on the Judiciary, 81st Cong. 1st Sess., 14, 19 (1949) (statement of Chief Judge Bolitha J. Laws of the United States District Court for the District of Columbia); *id.* 458 A.2d at 70 (statement of Judge Orie L. Phillips of the United States Court of Appeals for the Tenth Circuit); 107 Cong.Rec. 8709 (1961)

(comments of Sen. Dodd in introducing S. 1953, A bill to amend 18 U.S.C. § 5021). This policy, however, is not as far-reaching as appellant suggests. It does not preclude all use of the set-aside conviction. "The conviction records continue to be available to law enforcement personnel and court officials who have legitimate purposes for consulting the records." *Lindsay v. United States, supra*, 520 A.2d at 1063 (citing *United States v. Doe*, 235 U.S. App.D.C. 99, 730 F.2d 1529 (1984); *Doe v. Webster, supra*). In fact, a trial court may consider a conviction that has been set aside in imposing a subsequent sentence. *Barnes v. United States*, 529 A.2d 284, 288–89 (D.C.1987).

The limitations we have identified on the scope of the set-aside are helpful in evaluating what appellant advocates here. Appellant seeks to use the set-aside, not as a shield enabling him to begin life afresh, but as a sword to give the jury a distorted impression of his character. The policy underlying the set-aside must give way to the desirability of fully and fairly exploring at trial the value of testimony concerning the defendant's character, if the defendant chooses to put his character at issue. The jury, like a judge responsible for imposing sentence, has a need for accurate and balanced information to make its determination. The rule appellant seeks would diminish the efficacy of character witness cross-examination and skew the character witness procedure in the defendant's favor in cases like this. Accordingly, we hold that the trial court did not abuse its discretion in ruling that appellant's arrest could be used in cross-examining his character witnesses.

*Affirmed.*